UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| JONATHAN VINZANT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 5:12-CV-0843- |
| ) | CLS |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jonathan Vinzant, brings this action pursuant to the provisions of 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for a period of disability, disability insurance benefits, and Supplemental Security Income. Vinzant timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and

supported by substantial evidence." *Id.* (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. This court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Id*. Even if the court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Id.*

Unlike the deferential review standard applied to the Commissioner's factual findings, the Commissioner's conclusions of law are not presumed to be valid. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Therefore, the Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991). This includes the Commissioner's application of the proper legal standards in evaluating Vinzant's claim. *Martin*, 894 F.2d at 1529.

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which

are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations outline a five-step process that is used to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). The Commissioner must determine in sequence:

> (1) whether the claimant is currently engaged in substantial gainful activity;
>
> (2) whether the claimant has a severe impairment or combination of impairments;
>
> (3) whether the claimant's impairment meets or equals the severity of an impairment in the Listing of Impairments;[1]
>
> (4) whether the claimant can perform any of his or her past work; and
>
> (5) whether there are significant numbers of jobs in the national economy that the claimant can perform.

*Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178 (11th Cir. 2011). The evaluation process continues until the Commissioner can determine whether the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant who is doing substantial gainful activity will be found not disabled at step one. 20 C.F.R. §§ 404.1520 (a)(i), 416.920(a)(4)(i). A claimant who does not have a severe impairment will be found not disabled at step two. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A claimant with an impairment that meets

---

[1] The Listing of Impairments, ("Listings") found at 20 C.F.R. Part 404, Subpart P, Appendix 1, are used to make determinations of disability based upon the presence of impairments that are considered sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525.

or equals one in the Listing of Impairments will be found disabled at step three. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

Prior to considering steps four and five, the Commissioner must assess the claimant's residual functional capacity (RFC), which will be used to determine the claimant's ability to work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant who can perform past relevant work will be found not disabled at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five the burden shifts to the Commissioner to show other work the claimant can perform. *Foot v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). To satisfy this burden the Commissioner must produce evidence of work in the national economy that the claimant can perform based on the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(f), 416.912(f). A claimant who can perform other work will be found not disabled at step five. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920 (a)(4)(v). A claimant who cannot perform other work will be found disabled. *Id.*

In the present case, the Administrative Law Judge (ALJ) determined Vinzant was not engaged in substantial gainful activity, and found he had the severe impairments of "degenerative disc disease of the lumbosacral spine; degenerative joint disease of the left knee; uncontrolled insulin-dependent diabetes mellitus, type II; hypertension; obesity; anxiety; depression; and a personality disorder with avoidant features." R. 16. The ALJ concluded Vinzant did not suffer from a listed impairment. R. 17. The ALJ found Vinzant had the residual functional capacity (RFC) to perform a reduced range of light work. The ALJ found Vinzant

>can occasionally lift and carry ten pounds and frequently lift and carry twenty pounds; he can sit six to eight hours in an eight-hour workday with normal breaks; he can frequently push and/or pull foot controls with the left lower extremity; he must not climb ropes, ladders or stairs; he can occasionally crawl; he must avoid concentrated exposure to extreme cold and vibration; he must avoid all unprotected heights and hazardous machinery; he can understand and remember simple and some detailed instructions, but not complex instructions; he is able to sustain attention and concentration for two-hour periods in order to complete a regular workday at an acceptable pace and attendance schedule; he can occasionally interact with coworkers and supervisors, but he is restricted from public interaction at the workplace; and he should be able to respond to simple and infrequent changes in the workplace.

R. 18. With this RFC, the ALJ found Vinzant unable to perform his past relevant work. R. 23.

When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines ("the grids") to establish the presence of other jobs at step five.[2] *Foote*, 67 F.3d at 1558-59. The presence of a non-exertional impairment (such as pain, fatigue, or mental illness) also prevents exclusive reliance on the grids. *Id.* at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." *Id*. Based on Vinzant's RFC and the testimony of a vocational expert (VE), the ALJ found Vinzant could perform other work in the national

---

[2] The Medical-Vocational Guidelines, found at 20 C.F.R. Part 404, Subpart P, Appendix 2, are used to make determinations of disability based upon vocational factors and the claimant's residual functional capacity when the claimant is unable to perform his vocationally relevant past work. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a). Such determinations, however, are only conclusive when all of the criteria of a particular rule are met. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a).

economy. R. 23, 53-56. Therefore, the ALJ found he was not disabled at step five of the sequential evaluation framework. R. 24.

### III. FACTUAL BACKGROUND

Vinzant filed applications for a period of disability, disability insurance benefits, and Supplemental Security Income (SSI) on June 30, 2009, alleging he became disabled on January 3, 2009. R. 14. Vinzant was 36 years old at the time of the ALJ's decision. R. 23. He has a high school education, and past relevant work as a construction worker and an electrician's helper. R. 23. Vinzant testified he is disabled due to pain in his back, legs, shoulder and neck; diabetes; and symptoms of mental illness. R. 44-47.

The first treatment note in the record after Vinzant's alleged onset date is from an inpatient psychiatric admission at Decatur General Hospital in June 2009. R. 247. The discharge summary shows Vinzant was admitted on June 25, 2009, with no prior psychiatric history. R. 247. The reason for admission was as follows:

> Patient has had severe back pain since the age of 12. Because he does not have insurance, he has never been fully evaluated for pain. Now, he is having severe pain in the back, shoulder, and legs. Because of the pain, he has not been able to keep his job and he has been having financial problems. He feels hopeless and he has been having suicidal ideation.

R. 247. His urine drug screen was positive for marijuana. R. 247. During his stay Vinzant was given Celexa for depression and ibuprofen for pain. R. 247. His pain continued throughout his hospital stay, but "his mood improved to the point of feeling not depressed and not suicidal" at the time he was discharged. R. 247. Vinzant's discharge diagnosis on Axis I was "Depressive disorder, not otherwise specified; marijuana and alcohol abuse; and

anxiety disorder not otherwise specified." R. 247. Vinzant was assessed a GAF score of 45.[3] R. 247.

Following his discharge, Vinzant began seeing Dr. Thomas E. Lockard, a primary care physician. On June 30, 2009, Dr. Lockard noted Vinzant's diabetes was not well controlled. R. 252. Dr. Lockard increased his diabetes medications. R. 252. His Celexa prescription was also increased to treat his depression. R. 252. Dr. Lockard prescribed Naprosyn and Darvocet for Vinzant's chronic knee pain. R. 252.

On July 13, 2009, Dr. Lockard noted he had refused a phone request for Lortab. R. 251. His note states that he would not be doing chronic pain management. R. 251. Dr. Lockard reviewed x-rays of Vinzant's back and knee from his chiropractor's office. Dr. Lockard found the disk space was well maintained in Vinzant's back, but stated he might have "a mild degenerative disk disease at L5, S1." R. 251. Dr. Lockard found Vinzant's left knee x-ray revealed "a little bit of osteoarthritic changes." R. 251. Dr. Lockard gave Vinzant a prescription for Lortab, and added Klonopin for treatment of his depression and anxiety. R. 251.

---

[3] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th Edition, Text Revision) ("DSM-IV-TR"). A GAF of 41-50 indicates: "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **or any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." DSM-IV at 32 (emphasis in original).

On August 10, 2009, Vinzant's mother saw Dr. Lockard, and reported he was still having back pain and a lot of depression. R. 250. Dr. Lockard added a prescription for Seroquel to treat Vinzant's depression. R. 250.

Vinzant saw Dr. Lockard on September 18, 2009, complaining that his back pain and depression were not any better. R. 249. Dr. Lockard also found Vinzant's diabetes was not well controlled. R. 249. His prescriptions were adjusted. R. 249.

On November 12, 2009, Vinzant returned to Dr. Lockard with elevated blood sugar levels and high blood pressure. R. 356. Dr. Lockard did not think Vinzant was following his diabetic diet. R. 356. Dr. Lockard noted Vinzant continued to complain of "generalized pain all over," but noted that he had "declined to give him pain medication." R. 356. Dr. Lockard's note states: "I think a lot of his pain symptoms are coming from depression rather than actual physical pain." R. 356.

On January 18, 2010, Vinzant returned to Dr. Lockard for a checkup and medication refills. R. 355. Dr. Lockard found Vinzant's diabetes was not well controlled. R. 355. He also added "[p]robable bipolar disorder" to Vinzant's diagnoses. R. 355. He prescribed Lortab 7.5, two per day.

When Vinzant was seen on May 19, 2010, Dr. Lockard noted he still complained of chronic pain. R. 354. Dr. Lockard gave him a prescriptions for Lortab 7.5, four per day, and Xanax, each with three refills R. 354.

On July 19, 2010, Vinzant saw Dr. Lockard complaining of a spot on his leg, which appeared to be a spider bite. R. 352. His medications were refilled. R. 352. A prescription for Mobic was added after his visit. R. 350.

On October 20, 2010, Dr. Lockard found Vinzant's diabetes was poorly controlled. R. 349. His prescriptions were refilled, and his Lortab prescription was changed to Lortab 7.5, two per day. R. 349.

On January 20, 2011, Vinzant denied any problems, but needed refills of his medications. R. 347. The note states his mother had taken him off Cymbalta, but started him back because he was getting more depressed. R. 347.

On May 16, 2011, Vinzant returned for refills of his medicines, and reported he was "doing okay." R. 346. Vinzant's Lortab prescription was changed to Lortab 10, two per day. This is the last treatment note from Dr. Lockard in the record.

During the relevant time period, Vinzant was also seen by a nurse practitioner at the Quality of Life clinic on April 22, 2010, for regulation of his diabetes and blood pressure. R. 370. There are no physical exam notes, but his vital signs were recorded, which included a pain score of 9/10. R. 371. On July 12, 2010, it was noted that diabetes medications had been ordered through the patient assistance program, but that they had not arrived. R. 372. On this date, Vinzant's pain score was 0/10 and it was noted on examination that he exhibited "[n]o unusual anxiety or depression." R. 373. The diagnostic assessment was uncontrolled diabetes. R. 373.

Vinzant was also treated from June 29 to September 30, 2009, by Dr. Sidney Sawyer, a chiropractor. R. 256-297.

In addition to the treatment records, Vinzant underwent physical and mental examinations at the request of the Social Security Administration. A consultative physical disability examination was conducted by Dr. Marlin D. Gill on November 3, 2009. R. 299-301. On musculoskeletal examination Dr. Gill found Vinzant's gait was normal. R. 301. Although Vinzant complained of pain with movement, his neck and back appeared normal, and there was no tenderness. R. 301. Vinzant's left knee showed a prominent tibial tuberosity but otherwise looked normal.[4] R. 301. There was no swelling or effusion. R. 301. Dr. Gill found some crepitus with left knee movement. R. 301. Vinzant complained of pain with movement of his left knee. R. 301. However, Dr. Gill made the following observation: "Interestingly, when asked to squat from a standing position, he squats all the way down without holding on balancing himself on the tiptoes. He can arise back up again with no difficulty." R. 301.

Vinzant underwent a consultative mental examination by Dr. Barry Wood, Ph.D., on November 9, 2009. R. 303-06. Vinzant reported to Dr. Wood that he was fired from his most recent job after two months "secondary to medical absenteeism (e.g., diabetes, skeletal pain, ear pain)." R. 303-04. Prior to that job, Vinzant reported he had been employed by a construction company for "perhaps six months," when he was "fired secondary to

---

[4] The tibial tuberosity "is a large oblong elevation on the proximal, anterior aspect of the tibia, just below where the anterior surfaces of the lateral and medial tibial condyles end." http://en.wikipedia.org/wiki/Tibial_tuberosity.

10

interpersonal complications." R. 304. He reported that he had worked for another construction company for "perhaps three months before he quit '. . . because they didn't give me a raise' or words to that effect." R. 304 (ellipsis in original).

Vinzant reported to Dr. Wood that he could stand for 20-30 minutes on most days and was able to perform household chores, in limited increments, that included sweeping, mopping, and vacuuming. R. 304. He reported he was able to take out small bags of trash and prepare simple meals. R. 304.

Dr. Wood found Vinzant's affect was constricted, and his mood was depressed. R. 305. He found Vinzant's short-term and long-term memory were intact. R. 305. Dr. Wood estimated Vinzant's IQ was "within the Average range or high Low-Average range at lowest." R. 305.

Dr. Wood concluded Vinzant would be able to function independently and manage financial benefits if awarded. R. 305. Dr. Wood opined Vinzant would be able to understand instructions. R. 305. He opined Vinzant's "residual mood symptoms and probable personalogic deficits" would affect, but not preclude, his ability to recall instructions; follow instructions; and to attend to tasks for at least two consecutive hours. R. 305. Dr. Wood found Vinzant's condition would "significantly impact his ability to interact with coworkers, customers, and supervisors to a reasonable degree." R. 305. Dr. Wood diagnosed Vinzant with "Major Depressive Disorder With Anxiety, Recurrent, Moderate" and "Personality

Disorder NOS With Features of Avoidant Personality Disorder." R. 306. He assessed Vinzant with a GAF of 55.[5] R. 306.

## IV. ISSUES PRESENTED

Vinzant raises the following issues on appeal: 1) whether ALJ failed to properly articulate good cause for according less weight to the opinions of his treating physician, and 2) whether the ALJ failed to properly evaluate his complaints of pain.

## V. DISCUSSION

### A.

Vinzant argues the ALJ did not articulate good cause for giving less weight to the opinion of Dr. Lockard, one of Vinzant's treating physicians. Under the Commissioner's regulations, a treating physician's opinion will be given controlling weight if it is well supported and not inconsistent with other substantial evidence in the record.

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2). In considering whether an ALJ has properly rejected a treating physician's opinion, this court is not without guidance. "The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless

---

[5] A GAF of 51-60 reflects: "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers.)" DSM-IV-TR at 34 (emphasis in original).

12

"good cause" is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" exists when the evidence does not bolster the treating physician's opinion; a contrary finding is supported by the evidence; or the opinion is conclusory or inconsistent with the treating physician's own medical records. *Id*. If a treating physician's opinion is rejected, the ALJ must clearly articulate the reasons for doing so. *Id*. ("The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error.")

The record contains two letters from Dr. Lockard expressing his opinion about Vinzant's condition. Dr. Lockard's letter of January 29, 2010, contains the following:

> Mr. Vinzant has been a patient of mine since he was admitted to Decatur General West psychiatric facility for suicidal thoughts, suicidal attempt and major depression. In my view, I think he has bipolar depression. I have been treating him for such. His case appears to be fairly severe. In my opinion, I doubt that he will be able to find gainful employment due to his significant bipolar depression. He also complains of back pain which he states is moderate to severe. I have been unable to work that up due to his financial situation.

R. 335. On July 19, 2011, Dr. Lockard wrote the following:

> Jonathan is a 36 year old male who has been a patient of mine since October of 2005.[6] During this time he has suffered from major depression and bipolar disorder which are very difficult to control. He also has poorly controlled diabetes, chronic back pain, and high blood pressure. Mr. Vinzant is on multiple medications for both bipolar disorder and major depression as well as for his diabetes and other medical problems. Due to his bipolar disorder and major depression which has been very difficult to control, I feel like he is unlikely to find any gainful employment.

---

[6] Dr. Lockard's earlier letter indicates he began seeing Vinzant following his admission to the Decatur General West psychiatric facility in June 2009. R. 335. The first treatment note from Doctor Lockard in the record is dated June 30, 2009. R. 252.

R 368. The ALJ considered Dr. Lockard's opinions, but rejected them.

The ALJ noted that Dr. Lockard's opinions concerning Vinzant's ability to find gainful employment concerned an issue that is reserved to the Commissioner. R. 22. The regulations provide that opinions on issues reserved to the Commissioner are not medical opinions.

> Opinions on some issues, such as the examples that follow, are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.
>
> > (1) *Opinions that you are disabled*. We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

20 C.F.R. §§ 404.1527(d), 416.927(d)(1) (emphasis in original). Therefore, those portions of Dr. Lockard's letters were not medical opinions. *See Denomme v. Commissioner, Social Sec. Admin*. 518 F. App'x 875, 878 (11th Cir. 2013) (finding doctor's statement that claimant's condition would "likely prevent her from maintaining gainful employment" was not a medical assessment) (citing 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1)).

The ALJ also found Dr. Lockard's opinions were vague and unsupported. R. 22. This finding is supported by substantial evidence in the record. Although Dr. Lockard opined in his letters that Vinzant would be unable to find gainful employment because of his depression and bipolar disorder, the ALJ found his treatment notes "contain little objective

evidence supporting the alleged severity of [Vinzant's] symptoms." R. 19. A review of Dr. Lockard's treatment notes show that even though Dr. Lockard adjusted Vinzant's prescriptions for his mental conditions, there are no indications he conducted any mental status examinations. Dr. Lockard's treatment notes show that although he at one time attributed most of Vinzant's pain complaints to his depression, he subsequently prescribed narcotic pain medications. R. 355-56. Dr. Lockard's treatment notes also show that Vinzant complained primarily about pain, and not depressive symptoms. Therefore, substantial evidence supports the ALJ's finding that Dr. Lockard's treatment notes do not support his opinions that Vinzant would be unable to sustain gainful employment.

The ALJ also found Dr. Lockard's opinions were not supported by the consultative mental exam and opinions of Dr. Wood. R. 22. Dr. Wood conducted a mental examination of Vinzant and opined Vinzant's mental symptoms would affect, but not preclude his ability to follow instructions and attend to tasks for periods of two consecutive hours. R. 305. Although Dr. Wood found Vinzant's ability to interact with coworkers, customers, and supervisors was significantly impacted, he did not opine this would prevent all work. R. 305. Dr. Wood's assessment of a GAF score indicating only mild symptoms also supports the ALJ's decision not to credit Dr. Lockard's opinions. R. 306.

The opinions of Dr. Lockard are not bolstered his own treatment notes or by Dr. Wood's examination. Dr. Lockard's opinion is also conclusory because it does not specify how Vinzant's mental symptoms prevent him from sustaining gainful employment.

Therefore, the ALJ articulated good cause supported by substantial evidence for his decision to reject Dr. Lockard's opinions.

**B.**

Vinzant's second argument is that the ALJ failed to properly evaluate his complaints of pain. In this circuit a "pain standard" is applied "when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). The standard requires a claimant to show "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Landry v. Heckler*, 782 F. 2d 1551, 1553 (11th Cir. 1986). "[W]hether objective medical impairments could reasonably be expected to produce the pain complained of is a question of fact . . . subject to review in the courts to see if it is supported by substantial evidence." *Id.*

"[A] claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id*. However, the ALJ's credibility determination need not cite "particular phrases or formulations" as long as it enables the court to conclude that the ALJ considered the claimant's medical condition as a whole.

*Foote*, 67 F.3d at 1562. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.*

In the present case, the ALJ found Vinzant's medically determinable impairments could reasonably be expected to cause his alleged symptoms. R. 19. However, he found that Vinzant's allegations were not credible to the extent they were inconsistent with his RFC finding. R. 19. The ALJ articulated a number of reasons for rejecting Vinzant's testimony of disabling symptoms.

The ALJ also found Vinzant's reported daily activities were "not limited to the extent one would expect given the complaints of disabling symptoms and limitations." R. 21. The ALJ cited Vinzant's reports of "independently caring for his personal needs" and "performing household chores in limited increments, such as sweeping, mopping, vacuuming and taking out small bags of trash; preparing meals; playing the guitar; and watching television," which he found to be inconsistent with his allegations of disability. R. 21. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (approving of ALJ's reliance on inconsistencies between claimant's descriptions of diverse daily activities and her claims of infirmity to discredit her testimony).

The ALJ also found Vinzant's credibility was weakened because he had provided inconsistent information regarding his daily activities. R. 21. The ALJ noted Vinzant had told Dr. Wood that he was able "to take out small bags of trash, prepare meals like chicken stew, and perform household chores in limited increments, such as sweeping, mopping, [and] vacuuming." R. 21. However, he noted Vinzant had reported on his function report that his

17

mother performed all of these activities on his behalf. R. 21. The ALJ found these inconsistencies lead him to infer that Vinzant's other statements might not be entirely credible. R. 21-22.

The ALJ also considered Vinzant's "generally unpersuasive testimony at the hearing" as a factor in reaching his decision. R. 22. The ALJ specifically found Vinzant's "description of his mental symptoms was quite vague and general, lacking the specificity that might otherwise make it more convincing." R. 22. The ALJ cited as an example that Vinzant "was unable to explain what problems he had that would affect his ability to work." R. 22. At his hearing, Vinzant was asked about his mental symptoms.

> Q: Do you also have mental symptoms that you think would keep you from working?
>
> A: Yeah. I've had that all my life. I ain't never, ever held down a steady job.
>
> Q: Why not? What happens?
>
> A: I can't get along with people. I can't work with nobody.
>
> Q: Why do you have trouble working with other people?
>
> A: If I knew that I'd be a scientist. I don't know.
>
> Q: But I mean what happens?
>
> A: It just, I just, I don't know. It's a mental thing. I can't explain it. I don't know.

R. 47.

The Eleventh Circuit has held an "ALJ may consider the claimant's demeanor among other criteria in making credibility determinations." *Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985). The *Norris* court explained that

> [o]n appellate review, we defer often to the district court's findings based upon his observation and assessment of a witness's demeanor during trial. Likewise, an ALJ is afforded an opportunity to consider a claimant's demeanor during his hearing. The ALJ, however, must not reject the objective medical evidence and claimant's testimony <u>solely</u> upon his observation during the hearing; rather, the ALJ may consider a claimant's demeanor among other criteria in making credibility determinations.

*Id.* (emphasis added). The *Norris* court distinguished *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir 1982), which had prohibited "sit and squirm" jurisprudence. "In *Freeman*, we did not intend to prohibit an ALJ from considering the claimant's appearance and demeanor during the hearing. Rather, an ALJ must not impose his observations in lieu of a consideration of the medical evidence presented." *Norris* 760 F.2d at 1158. In the present case, the ALJ emphasized that the unpersuasive nature of Vinzant's testimony was only one observation among many that he used in deciding not to credit Vinzant's allegations. R. 22.

The ALJ found that although Vinzant's hospitalization for his mental illness would ordinarily support Vinzant's allegations about his symptoms, in the present case the records lacked objective findings to provide such support. R. 20. The ALJ also found Vinzant's noncompliance with the recommended follow-up treatment suggests his mental impairments might not have been as severe as he alleged.[7] R. 20.

---

[7] The discharge summary indicates Vinzant was to follow-up with the Morgan County Mental Health Center for treatment. R. 247.

As required by the Eleventh Circuit pain standard, the ALJ articulated specific reasons for discounting Vinzant's testimony of disabling symptoms. Those reasons are supported by substantial evidence. Because this court does not reweigh the evidence, there is no reversible error in the ALJ's credibility finding.

## VI. CONCLUSION AND ORDER

The court concludes the ALJ's determination that Vinzant is not disabled is supported by substantial evidence, and that the ALJ applied the proper legal standards in arriving at this decision. Accordingly, the Commissioner's final decision is AFFIRMED. Costs are taxed to claimant. The Clerk is directed to close this file.

DONE this 6th day of March, 2014.

_____
United States District Judge